## I. MARX ET AL. V. WILLIAM BAKER.

### No. 1189.

1. **Attempt to Mortgage a Homestead.**—Baker was owing J. Marx $310 on account. He persuaded Baker to secure the debt by a lien on his homestead. Marx was informed that the homestead could not be mortgaged, and he had Baker and wife convey to I. Marx a half interest in their homestead, reciting payment in the satisfaction of the said debt. J. Marx then, as agent of I. Marx, at once deeded back the land, having taken notes for $315 as purchase money, and taking a deed of trust on the land to secure the notes. There was conflict in the testimony—Marx testifying, that the conveyance by plaintiffs was absolute and unconditional; Baker and wife testifying, that they intended a mortgage. The amount—$315—was made up of the original debt, $310 and $5 for attorney fee for writing the conveyances, and the land was worth double the debt. The trial court properly held that the transaction was a mortgage, and illegal.

2. **Same.**—That other inducements determined plaintiffs to the transaction than securing the Marx debt would not legalize the attempted mortgage upon the homestead.

3. **Practice—Findings.**—The findings of facts by the trial judge having included all the material issues, it was not error to refuse to find in detail as to the several steps taken or acts done in completing the transaction which was the subject of contention.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

The opinion gives a full statement of the case.

*J. H. Banton,* for appellants, cited Astugueville v. Loustanau, 61 Texas, 233; Hardin v. Campbell, 63 Texas, 292; Brewster v. Davis, 56 Texas, 430; Chases' Case, 17 Am. Dec., 277; 1 Jones on Mort., 256; Grooms v. Rust, 27 Texas, 234.

*Richard I. Monroe,* for appellee, cited Const., art. 15, sec. 50; Ruffier v. Womack, 30 Texas, 342; Bank v. Lovenberg, 63 Texas, 509; Loving v. Milliken, 59 Texas, 423; Boatright v. Peck, 33 Texas, 75; Kennard v. Mabry, 78 Texas, 156; Gray v. Shelby, 83 Texas, 408; Medlenka v. Downing, 59 Texas, 39; Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 3; Stringer v. Swenson, 63 Texas, 13.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by the appellee, William Baker, against the appellants, I. Marx and J. Marx, to cancel a deed executed by him and his wife to I. Marx, and a certain deed executed by J. Marx, agent of I. Marx, to appellee, and a deed of trust executed by appellee and his wife to J. Marx, trustee for I. Marx. The petition alleges that on December 1, 1890, he (Baker) was indebted to J. Marx on a store account in the sum of $315; that the homestead of plaintiff and his wife consisted of a certain tract of land in the country, described in the petition, containing 49¾ acres; that he was unable to pay the store account; that J. Marx was urging plaintiff to secure the debt by a lien upon his homestead, stating that he did not want the place, but security for the debt, and that plaintiff might have all the time he desired in which to make payment; that accordingly, on December 1, 1890, J. Marx persuaded plaintiff and his wife to sign a deed conveying, as plaintiff thought, to him, but in fact to I. Marx, an undivided one-half of the homestead tract of land, reciting the consideration as the full payment and discharge of the said indebtedness, the deed being absolute upon its face; that the sale was intended as a mortgage or security for the aforesaid debt; that as a part of the same transaction, on the same day J. Marx had plaintiff to execute to I. Marx three notes for $105 each, due in one, two, and three years, bearing 12 per cent interest and 10 per cent attorney's fees if placed in the hands of an attorney for collection, and thereupon J. Marx, as agent for I. Marx, deeded the land back to plaintiff, reciting said notes as the consideration, and reserving a vendor's lien upon the land—one-half undivided interest in the 49¾ acres—to secure the payment of the notes; that the three notes represented the debt of $315, which was in the deed of plaintiff and his wife to I. Marx recited to have been paid, and there was no other consideration for the notes; that on the same day J. Marx further induced plaintiff and his wife to give a trust deed on the same land, making J. Marx trustee for I. Marx, beneficiary, to secure the payment of the said notes; that the first two deeds were at once filed for record, but the trust deed was not filed for record until January 20, 1892; that the pretended sale casts a cloud upon plaintiff's title to his homestead, though it is a nullity.   Prayer

for cancellation as before stated, and that the instruments be held for naught, and for general and special relief as the nature of the case requires. The defendants answered by general demurrer and general denial. The case was tried by the court and judgment rendered for plaintiff, decreeing the transaction to be a mortgage upon the homestead, and canceling the same.

The court filed conclusions of fact and law as follows, the findings of facts being found by this court to be correct:

"1. I find, that plaintiff was on the 1st day of December, 1890, indebted to I. Marx in the sum of $310, which debt was secured by mortgage on certain mules, horses, and cattle belonging to plaintiff.

"2. There was no evidence of the value of said mortgaged property, except as recited in the mortgage, viz., $420.

"3. That on December 1, 1890, the plaintiffs, being husband and wife, were the owners of the tract of 49¾ acres of land described in the petition, which they then occupied as their homestead, and which was of the value of $1250.

"4. That at and before said date the defendant was pressing plaintiff for payment of his debt, or for other security, and urged the husband to give defendant Marx a lien on his homestead, which he consented to do.

"5. When the parties met to consummate their agreement they learned that no mortgage could be given on their homestead, and the invalidity of such mortgage was fully explained to all the parties by Mr. Samuels, a competent lawyer, so that all parties understood that no mortgage could be made, and that a sale by Baker and wife to Marx, with an agreement that Marx would resell to them for the amount of the debt, retaining a lien on the land, being in effect a mortgage, would also be invalid.

"6. I find, that notwithstanding the advice of Mr. Samuels, Baker and wife made a deed to Marx, conveying a one-half interest in their homestead, expressing as the consideration the discharge and payment of the debt owing by Baker to Marx; that the value of the land conveyed was not discussed or stated; that it was fully understood between the parties at the time that Baker and wife did not want to sell, nor did Marx wish to buy, but only wished the payment of his debt, and that Marx would reconvey to Baker for the amount of his debt.

"7. I find, that Marx did, before the parties separated, reconvey to Baker, taking Baker's note for the amount of his debt and $5 (expense of drawing papers), and retaining a vendor's lien.

"And I find, as conclusions of law, that said transaction was in substance and effect a mortgage on the homestead of Baker and wife, and is invalid and void, and that judgment should be rendered for plaintiffs."

*Opinion.*—Appellants insist by assignment of error that the court erred in rendering judgment for plaintiff, because, they say, the deed

of plaintiff and wife to I. Marx shows that the transaction was a bona fide sale of an interest in plaintiff's homestead for the purpose of paying a debt due by plaintiff to I. Marx, and the recitals in the deed are binding on the plaintiff.

The deed of Baker and wife to I. Marx was a warranty deed, absolute on its face, and purported to convey an undivided one-half of the 49¾ acres of land described in plaintiff's petition, and recites as a consideration $315 "cash to us in hand paid by I. Marx, of the county of Parker, Texas, as follows: said William Baker being indebted to said Marx in said amount, and this deed being made in full payment and discharge of said indebtedness." The deed was duly recorded in the records of deeds of McLennan County, December 11, 1890, after it was acknowledged in form before S. L. Samuels, a notary public of the county. I. Marx, on the same date, by J. Marx, his duly authorized attorney, by warranty deed reconveyed the same land back to William Baker, reciting as a consideration the sum of $5 cash and his three promissory notes for $105 each, of same date—December 1, 1890—bearing interest, due, and in terms as set out in plaintiff's petition. The deed of trust, as set out in the petition, was also executed of same date, duly acknowledged, and recorded on January 20, 1892.

The plaintiff, William Baker, testified: "On the 1st of December, 1890, I was indebted to the defendant, I. Marx, or J. Marx claimed, in the amount of $310. I don't know I. Marx, and never had any dealings with him, and dealt with J. Marx, who runs a store in Waco, and thought I owed him, but don't think it was as much as $310, the amount he claimed. He had been after me for some time to give him some kind of security or lien on my homestead to secure his debt, and came to my place in the country twice to see me about giving him a lien on my homestead, and saw me several times in town about it. I always refused to do it, but he told me he did not want my land, but only wanted his debt secured, and if I would give him the lien he would sell my home back to me. I finally agreed to do this, he worried me so much, and on the 1st December, 1890, my wife and I came to town and signed the papers. When we got to Mr. Marx's store he had a lawyer there and all the papers had been drawn up, and I signed the papers, and signed them all at the same time. They were not read to me. I thought I was giving a lien on part of my homestead, and it was not my intention to sell any part of it. I am a negro, and can neither read nor write. Mr. Marx said he did not want my land, and I could have it back. I would not have signed the paper if I had thought I was selling my land. Mr. Samuels, the lawyer Mr. Marx had present when my wife and I signed the papers, did not explain them to me. He did not say I could not give a lien on my homestead, and that Mr. Marx could not agree to sell it back to me. After signing the papers I remained in possession of all my land, and am still in possession of it. Mr. Marx did release a mortgage on some of my stock after the papers above mentioned were signed, which he had

to secure his debt. I owed Mr. Faulkner, of East Waco, about $50, and I gave him a mortgage on part of the stock released from the chattel mortgage by Mr. Marx after the release. He (Faulkner) was after me about what I owed him. My land at the time the papers were signed to Mr. Marx was worth $25 per acre, and I could have sold it for that much; it is good land."

Plaintiff's wife testified: "I was the plaintiff's wife on December 1, 1890, but have been divorced from him since this suit was brought. On December 1, 1890, I signed a deed with my husband to Mr. Marx for one-half interest in our homestead. Mr. Marx said he did not want the land, but wanted security for the money my husband owed him. He said he would deed it back to us, and take notes with a lien upon the property. He did this the same day after we made the deed to Mr. Marx. I did not intend to sell any part of our homestead to Marx to pay the debt, but only to secure it. The lawyer did not read or explain the papers to me when he took my acknowledgment, and I did not understand them. I signed a deed of trust on the one-half interest on the homestead the same day. I thought it was to secure Marx, and that it was only a mortgage on a part of our homestead. The lawyer did not say that we could not give Marx a mortgage on our homestead. He was present and heard our conversation. They did not explain to us that a mortgage on our homestead would be void. Mr. Marx went off after we got to his store and brought back the lawyer, who then wrote out the papers."

J. Marx testified, in effect, that the transactions occurred as shown in the face of the papers; that he at first did agree with Baker to take a lien upon his homestead, but that his attorney, Mr. Samuels, informed him that it would be void, and that he, the attorney, fully explained the same matter to Baker and his wife; that it was then proposed that Baker sell the land to him in payment of the debt and he would deed the land back, taking notes covering the debt in payment, but that Mr. Samuels told them such a transaction would be void—that the sale, to hold, must be an actual sale without any agreement to deed the land back. He also testified, that the sale of the land by Baker was complete and at an end, the deed delivered, and the debt canceled on his books, when Baker took him to one side and proposed to buy the land back; that this was done as an independent transaction from the sale to I. Marx by Baker and wife.

Mr. Samuels, the attorney, testified, that seeing the Bakers were ignorant people, he carefully explained to them that they could not give a lien on their homestead to pay a debt, but that they could sell to pay the debt, so that they fully understood that in selling they parted with the homestead forever. He says he also told them that they could not sell with an understanding that they could buy it back; that Baker and wife then agreed to sell; that he prepared the deed, conveying the property in full satisfaction of the debt, read it over to them and fully explained it to them, and took their acknowledgments

in form; that the deed was then delivered to Marx, who then canceled the account on the books. He further testified, that then the Bakers and Marx asked him if Mr. Marx could sell the land back to Baker, and he replied, "Yes;" that they requested him to draw the papers. He did so, drawing the three notes for $105 each, which Baker signed, and drawing the deed of trust, which was also signed, and duly read and explained to the parties; that all the parties acted on his advice; that the resale was a separate transaction from the sale to Marx; that all the transactions occurred the same day and occupied about two hours of time, as there was a great deal of discussion among the parties.

The court below, whose province it was to determine the question, adopted that version of the testimony showing that the sale to Marx was simulated, and that the whole transaction was in fact and effect a mortgage upon the homestead. We can not say that there was not evidence to warrant this conclusion of the court—that the very debt as shown by the notes was the same debt due by the account, with $5 added to pay for drawing the papers. The form of the debt was changed, but the court was not bound to conclude, under the testimony, that it was not the same debt. The court, looking to the whole transaction, all done at the same interview, and all the testimony, giving to it such credit as in his judgment it was entitled to, did not decide without evidence to support his conclusion that the debt was the same and that it had not been paid, and that the effect of the transaction was to give a lien on the homestead. We do not feel authorized to say that the court erred in construing all the instruments together as one transaction resulting in a lien on the homestead, or that he erred in holding such to be the result of the transaction.

Appellants insist, that the court having found that the parties were advised by a competent attorney that a conditional sale of or a mortgage upon the homestead would be invalid, he was in error in finding that a mortgage was made, and that there was no evidence establishing the mortgage. The court found that the parties were so advised, but that notwithstanding this the effect of the transaction was to mortgage the homestead. We do not think the court was incorrect in this. The entire transaction has the appearance of creating a lien upon the homestead to pay the original debt. Baker and wife say they so understood it. It can not be said that the court erred in giving it that effect.

Appellants insist that the court erred in refusing to answer the request for findings as to the value of the property mortgaged by plaintiff to defendants before the transaction involved in this suit occurred. We think such a finding was immaterial. J. Marx testified, that he held a chattel mortgage given by Baker on some mules, horses, and cattle which were worth the amount of the debt. The court found that there was no evidence of the value of this mortgaged property except as recited in the mortgage, viz., $420. There was no error as assigned.

The defendants below requested the court to find upon the successive steps in the transaction as follows: Whether or not plaintiff was being threatened with prosecution because of having mortgaged certain personal property a second time and desired a release from defendants; whether appellee was unwilling to convey the homestead unless he could repurchase; whether all parties were advised that no such agreement could be made; whether appellee agreed to convey a one-half interest in his homestead in consideration of discharge from indebtedness by appellants and release from the chattel mortgage; whether an attorney drew up a warranty deed for the one-half of the homestead and explained the same fully to appellee and his wife, and whether they signed the same with full knowledge of its contents; whether an agreement to resell had been made at the time of the execution of the deed; what was the value of the land; whether, immediately after the execution of the deed, Marx receipted appellee for his indebtedness and released and canceled the mortgage; whether, after this transaction, appellee applied to J. Marx to repurchase the land, and the deed and trust deed were executed by the parties; whether the trust deed was read and explained to appellee and his wife; whether any part of the notes had ever been paid; whether it was the intent of the parties that the indebtedness existing should be extinguished. The court did not in his findings specifically answer all the requested findings. We think, however, that his conclusions directly or inferentially include answers to the material questions, and in so far as they were of importance.

J. Marx testified, that some time before the deed was executed Baker applied to him to have the chattel mortgage on the mules, horses, and cattle released, "as he wanted to give one Faulkner a mortgage on the stock, as Faulkner was threatening him with a criminal prosecution, but would not press it if he would give him a mortgage to secure the debt he owed him. Baker said if I would release the mortgage he would give me a mortgage on his homestead," etc. We find the facts affirmed in this testimony to be true, but it would not change the conclusion arrived at by the trial court—that the transaction between the parties was a mortgage on the homestead, and not a sale.

The court inferentially found that plaintiff did not agree to make an absolute sale of the homestead, that he did not understand the deed to be such, that the matter was not so explained to him, but that he understood he was giving a mortgage on his homestead; that the old debt was not extinguished, but was changed in form and secured by a lien upon the homestead. The important matters propounded to the court were necessarily included in his findings. We think no injury was done by the court in failing to find specifically as requested, and that there was no error in such failure.

We find no error in the judgment of the lower court as assigned, and it is affirmed.

*Affirmed.*

Delivered March 6, 1895.